**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Smith,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Dysart Unified School District,<br><br>　　　　　Defendant. | No. CV-25-03407-PHX-JZB<br><br>**ORDER** |

Pending before the Court is Defendant's "Motion to Dismiss" (doc. 37). Defendant seeks dismissal of Plaintiff's 20 U.S.C. § 1415(j) stay-put action based on *res judicata*, collateral estoppel, and an argument that her Complaint fails to state a claim upon which relief may be granted. (Doc. 37 at 1) (citing Fed. R. Civ. P. 12(b)(6)). Plaintiff has filed a Response, and finding a Reply unnecessary in this matter, the Court orders as follows. Although the Court is unpersuaded that *res judicata* and collateral estoppel are applicable here, it will grant Defendant's Motion on the grounds that Plaintiff's Complaint fails to state a claim upon which relief may be granted.[1]

**I.　Background**.

A.M.—Plaintiff's son—is a six-year-old first grader who has been diagnosed with multiple cognitive disabilities and impairments.[2] (Doc. 10 at 71–72.) A.M. was first

---

[1] The parties fully consented to Magistrate Judge jurisdiction in this action on October 31, 2025. (Doc. 25.) The parties re-affirmed their consent to Magistrate Judge jurisdiction on January 12, 2026. *See* (doc. 34.)

[2] Those include Autism Spectrum Disorder, Oppositional Defiant Disorder, Cerebral Palsy, variant RAB-11A, Depression, and Attention-Deficit Hyperactivity Disorder. (Doc. 37-1 at 15.) A.M. requires "braces for daily walking, uses a walker at home, and uses a

identified as eligible for special education and related services by Buckeye Elementary School District ("Buckeye") in April 2023 during his preschool year. (Doc. 37-1 at 14–15.) On August 20, 2024, A.M.'s Individualized Education Program ("IEP") team at Buckeye drafted his annual IEP, where he was assigned to a Level C placement. (*Id.* at 16.) This IEP called for A.M. to be provided "special education services and accommodations within a regular education classroom for less than 40% of the school day[.]" (Doc. 15 at 2.) This is A.M.'s last implemented IEP. (Doc. 10 at 19.)

A.M. "did not make any progress on his IEP goals from August 20, 2024, through his IEP addendum date of December 16, 2024." (Doc. 37-1 at 16.) Because of this lack of progress, a Multidisciplinary Evaluation Team ("M.E.T.") at Buckeye convened to amend his IEP on May 21, 2025. (*Id.*) In the proposed amended IEP, the M.E.T. reassigned A.M. to a Level D placement, where he would be in a separate day school more than 50% of the school day. (*Id.*)

On June 27, 2025, Plaintiff objected to the proposed amended IEP and requested am Independent Educational Evaluation ("IEE") and Functional Behavioral Assessment ("FBA") from Buckeye. (*Id.* at 17.) On July 30, 2025, Buckeye notified Plaintiff that they would provide A.M. with an IEE and FBA. (*Id.*)

Thereafter, Plaintiff transferred A.M. to Defendant Dysart Unified School District (the "District") in 2025, where he was scheduled to begin classes in early September. *See* (doc. 10 at 19); *see also* (doc. 15 at 2–3.) Prior to A.M.'s first day of school, the District offered A.M. "educational services at a private day school placement as commensurate placement" with his last implemented IEP. (Doc. 15 at 3.) This program was the "Autism Center for Exceptional Students ("ACES"), a Level D private day school." (Doc. 37-1 at 14.) Plaintiff was notified that A.M. "would not have the opportunity to interact with general education peers at ACES." (*Id.* at 18.)

Plaintiff filed an initial complaint with the Arizona Department of Education alleging four violations of the Individuals with Disabilities Education Act ("IDEA") on

---

medical stroller for outdoor ambulation." (*Id.*)

September 2, 2025. (*Id.* at 11.) The Arizona Department of Education set this matter for a hearing on October 20, 2025, before the Office of Administrative Hearings ("OAH"), an independent state agency. (*Id.*)

Additionally, Plaintiff notified the District of her objection to the District's proposed placement on September 4, 2025. (*Id.* at 18.) On September 5, 2025, the District notified Plaintiff that it would offer A.M. placement in a Level C Positive Engagement, High Expectations, Achievement, Student Centered, and Effective Communication" ("PHASE") program at Countryside Elementary School. (*Id.*) On September 8, 2025, A.M. commenced his first-grade year at Countryside Elementary School. (*Id.*)

On September 15, 2025, the District notified Plaintiff that A.M. would be transferred to a Level C "Structured Teaching Classroom" ("STC") program at Countryside Elementary School. (*Id.*) District explained that this transfer "provides [A.M.] the opportunity to safely access . . . needed supports in a specialized setting . . . . [and] the team is concerned about [A.M.'s] safety due to the high magnitude behaviors experienced in the PHASE classroom." (Doc. 10 at 21.) Additionally, Defendant noted that "[t]he STC classroom better meets [A.M.]'s cognitive, academic, adaptive[,] and communication needs . . . . [and that] all supports and services will be provided as documented in the IEP dated 12/16/2024." (*Id.*)

On September 17, 2025, Plaintiff filed her Complaint with this Court requesting enforcement of § 1415(j) due to the ongoing OAH hearing. (Doc. 1.) Specifically, Plaintiff sought a court order requiring the District to return A.M. to the PHASE program from the STC program. (*Id.* at 5.) Plaintiff supported her request by arguing that the District's transfer of A.M. from PHASE to the STC program amounted to a change from A.M.'s then-current educational placement, in contravention of § 1415(j) of the IDEA. *See* (doc. 1 at 5–6.) It is important to note that Plaintiff's Complaint is not an appeal of a state Agency decision; It is based solely on a § 1415(j) claim for an injunction. *See generally* (*id.*)

On September 23, 2025, Plaintiff filed an amended complaint before the OAH. (Doc. 37-1 at 11.) Included in the amended complaint was a claim for a stay-put violation

- 3 -

under § 1415(j) of the IDEA. (*Id.* at 11–12.)

On October 1, 2025, Plaintiff filed an "Emergency Motion to Enforce Stay-Put Placment" in this Court. (Doc. 10.) Due to the motion, this Court ordered expedited service by the U.S. Marshals Service on October 3, 2025. (Doc. 11.)

On October 7, 2025, service was executed upon Jason Yeager, the Director of Security at the District. *See* (doc. 15 at 4–5); see also (doc. 12.) Because Yeager was not authorized to accept service on behalf of Defendant, Defendant filed an initial motion to dismiss pursuant to Rule 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 15.) After full briefing, this Court found that service was not properly executed, preventing it from exercising personal jurisdiction over Defendant. (Doc. 25.) However, this Court, in its discretion, treated the motion to dismiss as a motion to quash and quashed service. (*Id.*) The Court required Plaintiff to serve an individual authorized to accept service on the Defendant's behalf. (*Id.*)

Before proper service was executed in this action, the OAH adjudicated Plaintiff's IDEA claim. On December 9, 2025, the OAH dismissed Plaintiff's state agency action with prejudice, *including* her stay-put claim. (Doc. 37-1 at 30–31, 35.)

Returning to the instant action, the Court, seeing as proper service was imminent, held a hearing between the parties on January 12, 2026. (Doc. 34.) At the hearing, Defendant notified the Court of its intention to file the instant Motion to Dismiss. (*Id.*) the Court set a deadline for Defendant to file the instant Motion after service was received. (*Id.*)

On January 20, 2026, service was properly executed. (Doc. 36.) Thereafter, on January 29, 2026, Defendant filed the instant Motion. (Doc. 37.)

**II.     Legal Standards**.

Under Rule 12(b)(6), dismissal is proper where "the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Id.* at 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

In analyzing a *pro se* Plaintiff's filings, the United States Court of Appeals for the Ninth Circuit has instructed that courts must "construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *Jones v. Cmty. Redevelopment Agency of L.A.*, 733 F.2d 646, 649 (9th Cir. 1984) ("The allegations of a *pro se* complaint, however inartfully pleaded, should be held to less stringent standards than formal pleadings drafted by lawyers[.]") (cleaned up). However, "[e]ven as lawyers must, pro se litigants must become familiar, and comply, with the Rules of Civil Procedure and the Local Rules of Practice for the District Court for the District of Arizona." *Warmack v. Riveria*, No. CV-20-02298-PHX-SPL, 2021 WL 1662691, at *1 (D. Ariz. Apr. 28, 2021) (cleaned up).

### III. Discussion.

Although the Court is not persuaded that *res judicata* or collateral estoppel[3] are

---

[3] Defendant's first two arguments attempt to apply state law grounds pursuant to the Constitution and federal statute. *See* (doc. 37 at 4–6); *see also Valenzuela v. Union P. R.R. Co.*, 194 F. Supp. 3d 918, 922 (D. Ariz. 2016) (citing 28 U.S.C. § 1738). However, these arguments appear—in effect—to apply a faulty interpretation of 28 U.S.C. § 1738. As stated by the U.S. Supreme Court:

> We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose. . . . The principle holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal, . . . which acts in a judicial capacity.

applicable here, the Court, for the following reasons, finds that Plaintiff has failed to state a claim upon which relief may be granted.

"The IDEA provides federal funds to help state and local agencies educate children with disabilities while conditioning the funds on compliance with specific goals and procedures, primarily the obligation to provide a free appropriate public education ("FAPE")." *R.F. by Frankel v. Delano Union Sch. Dist.*, 224 F. Supp. 3d 979, 985 (E.D. Cal. 2016) (citing 20 U.S.C. § 1412). "The IDEA primarily seeks to make public education available to handicapped children who were previously excluded from any form of public education." *K.D. ex rel. C.L. v. Dep't of Educ., Haw.*, 665 F.3d 1110, 1114 (9th Cir. 2011). Specifically, the IDEA is aimed at curbing "the apparently widespread practice of relegating handicapped children to private institutions or warehousing them in special education classes." *Id.*

One requirement under the IDEA is the creation of an IEP for each child with a disability. *See* 20 U.S.C. § 1414(d). Where a parent disagrees with the contents of an IEP created for their child, that parent may challenge that IEP by requesting an administrative due process hearing. *See Marcus I. ex rel. Karen I. v. Dep't of Educ., Haw.*, 868 F. Supp. 2d 1015, 1016–17 (D. Haw. 2012), *aff'd sub nom. Marcus I. ex rel. Karen I. v. Dep't of Educ.*, 506 F. App'x 613 (9th Cir. 2013) (citing 20 U.S.C. § 1415(b)(6), (f)(1)(A)).

During the pendency of a due process hearing, "unless the State . . . and the parents otherwise agree, the child shall remain in the *then-current educational placement* of the child[.]" 20 U.S.C. § 1415(j) (emphasis added). Although the IDEA does not define 'then-

---

Courts do not, of course, have free rein to impose rules of preclusion, as a matter of policy, when the interpretation of a statute is at hand. In this context, the question is not whether administrative estoppel is wise but whether it is intended by the legislature. The presumption holds nonetheless, for Congress is understood to legislate against a background of common-law adjudicatory principles. . . . Thus, where a common-law principle is well established, as are the rules of preclusion, . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident.

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108–09 (1991) (cleaned up). Defendant has not convinced the Court that Congress enacted IDEA with the expectation that the common-law principles of *res judicata* and collateral estoppel apply.

current educational placement,' the United States Court of Appeals for the Ninth Circuit has "interpreted the phrase to mean the placement set forth in the child's last implemented IEP." *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 902 (9th Cir. 2009); *Johnson ex rel. Johnson v. Spec. Educ. Hearing Off., Cal.*, 287 F.3d 1176, 1180 (9th Cir. 2002) ("For the purpose of § 1415(j)'s 'stay put' provision, the current educational placement is typically the placement described in the child's most recently implemented IEP.").

Generally, a motion to stay put acts as an "automatic preliminary injunction, meaning that the moving party need not show the traditionally required factors (*e.g.*, irreparable harm) in order to obtain preliminary relief." *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1037 (9th Cir. 2009). However, this automatic standard only applies where the motion is brought before the *original* adjudicative body—here, the Arizona Office of Administrative Hearings—or a court hearing the due process appeal. *See N.D. ex rel. Parents Acting as Guardians ad Litem v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 (9th Cir. 2010) ("The preliminary injunction would order the [Department of Education] to recognize the invocation of the stay-put provisions. The alleged violation is that Hawaii is not providing the protection of the stay-put provision. The claim underlying the preliminary injunction is that the stay-put provision applies. In essence, the preliminary injunction is an injunction for an injunction.").

Because this case amounts to "an injunction for an injunction," the traditional preliminary injunction balancing test applies. *See id.* To receive a preliminary injunction, Plaintiff must show that: "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Turning to the case at hand, Plaintiff has not plead sufficient factual matter, taken as true, to state a plausible claim to relief because she "fails to allege sufficient facts to support a cognizable legal theory." *Somers*, 29 F.3d at 959. Namely, Plaintiff has not

presented any facts establishing that Defendant has transferred A.M. from his then-current educational placement. Here, both A.M.'s original program, PHASE, and his new program, STC, are both Level C programs in the same school that match his last implemented IEP. Neither the facts of this case nor Ninth Circuit caselaw lend credence to the assertion that, by moving A.M. from PHASE to STC, Defendant has transferred A.M. from his then-current educational placement.

For example, in *S.S. v. Eugene Sch. Dist. 4J*, the United States Court of Appeals for the Ninth Circuit addressed a situation where a child's program was modified while the child remained in the same school after the district underwent after programmatic changes. See J.S. by and through *S.S. v. Eugene Sch. Dist. 4J*, No. 23-35522, 2024 WL 4750499, at *1 (9th Cir. Nov. 12, 2024). Although the child's program underwent modification, the school district "had no obligation to provide services in the District's [new] program []in a manner identical to the services provided in [prior] program [.]" *Id.* Because both programs satisfied the child's last implemented IEP, the change did not violate the IDEA. *Id.*

In analyzing the pleadings in the light most favorable to Plaintiff, the Court finds that switching A.M. from one LRE C classroom to another does not amount to a violation of the IDEA stay put provision. Because A.M.—under the Ninth Circuit's interpretation of § 1415(j)—has remained in his then-current educational placement, Plaintiff's claim fails to state a plausible claim for relief. *See L.M.*, 556 F.3d at 902; *see also S.S.*, 2024 WL 4750499, at *1. Hence, Plaintiff's Complaint shall be dismissed.

IV.   **Leave to Amend**.

"*Pro se* complaints are to be construed liberally and may be dismissed for failure to state a claim only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Barrett v. Belleque*, 544 F.3d 1060, 1061 (9th Cir. 2008) (per curiam) (citation omitted). The Court may only dismiss a *pro se* complaint without leave to amend where "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) (cleaned up).

Because it appears, as a matter of law, that the deficiencies in Plaintiff's Complaint cannot be cured by amendment, the Court will dismiss Plaintiff's Complaint without leave to Amend. However, it is important to note that this holding does not preclude Plaintiff from filing an appeal of the OAH's determination. Rather, this holding solely precludes Plaintiff from refiling a § 1415(j) action for injunctive relief based on A.M.'s transfer from PHASE to STC.

**V.     Conclusion**.

While the Court is empathetic to Plaintiff's desire "to protect [her] child's development and enforce the rights that federal law gives him," (doc. 39 at 2), such empathy does not overcome the critical factual and legal flaws in her Complaint. Consequently, the Court shall dismiss Plaintiff's Complaint with prejudice because it fails to state a claim upon which relief may be granted.[4]

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (doc. 37) is **GRANTED**. The Clerk of Court is kindly directed to file Defendant's Motion to Dismiss (doc. 37) under seal pursuant to Fed. R. Civ. P. 5.2(a)(3).

**IT IS FURTHER ORDERED** that Plaintiff's Complaint (doc. 1) is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that all pending motions are **DISMISSED** and any scheduled hearings are **VACATED**. The Clerk of Court is kindly directed to terminate this action.

Dated this 5th day of February, 2026.

Honorable John Z. Boyle
United States Magistrate Judge

---

[4] As a final note, the Court will seal Defendant's Motion to Dismiss (doc. 37) because it contains A.M.'s full name. *See* Fed. R. Civ. P. 5.2(a)(3) ("Unless the court orders otherwise, in an electronic or paper filing with the court that contains . . . the name of an individual known to be a minor, . . . [the] party . . . making the filing may include only . . . the minor's initials[.]").